Williams, Judge,
delivered the opinion of the Court:
The plaintiff, a common carrier, sues to recover the sum of $860.89 admittedly due it for the transportation of mail during the quarter ending June 30, 1928. The plaintiff during the quarter became entitled to and was allowed $8,585.18, but instead of payment in full thereof, the defendant’s disbursing officer paid $1,724.29 only, the difference of $860.89 being withheld by the accounting officer of the Government on the ground that the plaintiff had been overpaid by that amount when commercial freight rates rather than land-grant rates were applied as transportation charges under the following circumstances:
In 1920 the United States Shipping Board ordered from the Western Petroleum Company fuel oil amounting to 148 tank cars and these were paid for by the United States Shipping Board Emergency Fleet Corporation. The shipments originated at Tulsa, Oklahoma, and were delivered at Ecorse, Michigan, the Fleet Corporation paying the *231 freight charges, at full tariff rates, without land-grant deductions, to the plaintiff, which was the final carrier.
The General Accounting Office determined that this was an overpayment, to the extent here involved, of $860.89 and caused that amount to be withheld, as heretofore stated. This sum, $860.89, which is the amount sued for, with interest, is the difference, as the findings state, “ out of revenue coming to lines east of the Mississippi River, between freight charges originally paid to the plaintiff on all the shipments here involved and the net amount plaintiff would be entitled to receive from defendant on identical shipments the property of the United States, routed by way of the land-aided line of the Illinois Central Railroad between Kankakee and Chicago, which is a route available for equalization, under plaintiff’s agrément * * * on Government traffic included within its terms.”
The so-called “ equalization agreement ” was similar to that involved in the case of Northern Pacific Ry. Co. v. United States, 72 C.Cls. 563, 565, except for two important differences. In the instant case (1) there is specified, in addition to the Quartermaster’s Department of the Army, the Department of the Interior, and the Reclamation Service and (2) the deductible land grant is limited to the Chicago-Kankakee Gateway, specifications and limitations which did not appear in the Northern Pacific case.
In other words the equalization agreement in the instant case does not have the general application to Government business as did that in the Northern Pacific case. There the agreement was on its face in connection with shipments by the Quartermaster General, but the Quartermaster General, as there indicated, p. 515, was authorized by law to ship generally for the Government. Act of July 5, 1884, 23 Stat. 107, 111. It was obvious, with this availability of the Quartermaster General as a shipping officer, that any department of the Government could avail itself of his facilities in order to secure the reduced rates of his equalization agreement. The shipping business of the Government has enormously increased since 1884. Bills of lading of the civil establishments were therefore for very practical reasons substituted *232 for quartermaster bills of lading. It being hardly more than a matter of the form of bill of lading, the general equalization agreement could well be and apparently was applied to shipments of the civil establishments, whether made on a quartermaster’s form or, say, a Treasury form,, and all this with the carriers’ acquiescence. The civil establishments could, if they desired to, ship on a quartermaster’s: bill of lading, and that being the situation there was no> practical reason why the general equalization agreement, should be restricted to shipments billed out on a quartermaster’s form, and if the situation is understood correctly,, it was not by either Government or carriers, so restricted.
In the case here before the court it was obviously the intention of the plaintiff to make its own equalization restrictive. It did not enter into the general agreement involved in the Northern Pacific case, but limited its agreement to certain business, naming it. By naming, in addition to the Quartermaster’s Department, the Interior Department and the Eeclamation Service, the intention was apparent to enumerate specifically the business to be covered. Plaintiff’s, agreement went further. It applied only to the land-grant, line of the Illinois Central Eailroad between Chicago and Kankakee, and not, as in the general agreement considered in the Northern Pacific case, and by the Comptroller of the Treasury, 21 Comp. Dec. 744, throughout the United States., Plaintiff’s “ equalization ” agreement possessed limitations-that were not considered by the accounting officer in his-decision just cited. The conclusion reached by the Circuit Court of Appeals, Sixth Circuit, in its opinion of May 11, 1929, 32 Fed. (2nd) 887, United States v. New York, C. & St. L.R. Co., insofar as it holds that the agreement there considered, which is that of plaintiff’s in the case now before-the court except for the limitation to the Illinois Central route, is to be restricted to movements by the Quartermaster’s Department, U.S. Army, the Interior Department, and the Eeclamation Service (which is and was a part of the Interior Department), is not in conflict with the Northern Pacific case, cited supra.
*233 The amount withheld, $860.89 is recoverable and it is unnecessary to discuss the question whether the property transported was, in transitu, the property of the United States.
Plaintiff claims interest on $860.89 from July 1, 1928. It is entitled to interest from the date that amount was withheld by the Comptroller General, Helvetia Milk Condensing Co. v. United States, 74 C.Cls. 142; Converse v. United States, 75 C.Cls. 542, but only up to March 3, 1933, the effective date of section 13 of the Treasury and Post Office Departments appropriations act, Public, No. 428, 72nd Congress, amending the act of March 3, 1875, Whitbeck, Receiver v. United States, 77 C.Cls. 309, decided April 10, 1933; Chicago, Indianapolis & Louisville Railway Co., v. United States, 78 C.Cls. 96, decided June 5, 1933.
The record is silent as to the date on which the Comptroller General made the set-off. The entry of judgment, will therefore await the filing of a stipulation of the parties showing such date, or in case such stipulation be not filed by the parties, until the commissioner of the court to whom the case is referred for the ascertainment of that fact makes-his report, and for that purpose the case is referred to Commissioner Ewart W. Hobbs.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.